# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Nicklos Rosenbloom,  Civil No. 09-1582 (DWF/SRN)

          Plaintiff,

v.  **MEMORANDUM**
**OPINION AND ORDER**

General Nutrition Center, Inc., *also*
*known as* General Nutrition Corporation;
Dallas Henry; and Shane Von Behren,

          Defendants.

_____

Scott E. Selmer, Esq., Conner McAlister and Selmer, LLC, counsel for Plaintiff.

Joseph J. Roby, Jr., Esq., and Michele L. Miller, Esq., Johnson, Killen & Seiler, PA,
counsel for Defendant General Nutrition Center, Inc.

_____

# INTRODUCTION

This matter is before the Court on a Motion to Enforce Settlement Agreement and

to Recover Costs and Fees brought by General Nutrition Center, Inc., also known as

General Nutrition Corporation ("GNC").  For the reasons set forth below, the Court

grants the motion.

# BACKGROUND

Nickloas Rosenbloom worked for GNC from November 2001 through August 2005. In June 2009, Mr. Rosenbloom commenced this action against GNC,[1] alleging claims of racial, sexual orientation, and disability discrimination. On September 29, 2009, Magistrate Judge Susan Richard Nelson presided over a settlement conference. Mr. Rosenbloom appeared at the settlement conference with Albert T. Goins, Esq., and Thomas E. Harmon, V, Esq. Greg Roisen, GNC's Regional Sales Director, appeared on behalf of GNC with Joseph J. Roby, Jr., Esq. Mr. Rosenbloom's sister, Nicole Rosenbloom, and a friend, Diane Devon, also attended the settlement conference.

After the parties agreed to a settlement, the terms of the settlement were placed on the record. Specifically, Mr. Roby explained the material terms of the settlement that required, among other things, GNC to make a cash payment to Mr. Rosenbloom, GNC to make changes to Mr. Rosenbloom's personnel file, and Mr. Rosenbloom to dismiss with prejudice the claims in this action. Later, both Magistrate Judge Nelson and Mr. Goins discussed specific conditions of the settlement with Mr. Rosenbloom and questioned Mr. Rosenbloom about his understanding and willingness to agree to the settlement. When

---

[1] Mr. Rosenbloom added Dallas Henry and Shane Von Behren, both of whom were Mr. Rosenbloom's supervisors when he worked for GNC, as defendants in the Amended Complaint. Although there is nothing in the record to suggest that these defendants were served, Mr. Rosenbloom agreed to dismiss his claims against Henry and Von Behren at the settlement conference. (Doc. No. 37 at 9.)

Magistrate Judge Nelson asked Mr. Rosenbloom if he had been well-represented by counsel, Mr. Rosenbloom replied "very." (Doc. No. 37 at 7.)

As Mr. Roby stated on the record, the parties intended to memorialize the September 29, 2009 settlement in a written agreement. After drafts of a written agreement were reviewed by the parties' lawyers, Mr. Rosenbloom refused to sign the agreement. Shortly thereafter, Mr. Goins and Mr. Harmon sought to withdraw as counsel for Mr. Rosenbloom. Magistrate Judge Nelson granted the motions to withdraw on November 6, 2009, and she gave Mr. Rosenbloom thirty days to secure new counsel before GNC could file any further motions. Mr. Rosenbloom's current counsel filed a notice of appearance on December 6, 2009, and GNC filed the current motion on December 10, 2009. The Court held a hearing on the motion on March 12, 2010.

## DISCUSSION

### I.     Enforceable Settlement Agreement

Settlement of lawsuits without litigation is highly favored, and such settlements will not be set aside lightly. *Johnson v. St. Paul Ins. Cos*., 305 N.W.2d 571, 573 (Minn. 1981). If a settlement unravels before the original suit is dismissed, a party who seeks to keep the settlement may file a motion for enforcement because a district court possesses the inherent or equitable power to enforce an agreement to settle a case pending before it. *Simmons, Inc., v. Koronis Parts, Inc.*, Civ. No. 00-1984 (ADM/RLE), 2002 WL 1347401, * 2 (D. Minn. June 18, 2002).

Under Minnesota law,[2] it is well established that settlement agreements are governed by principles of contract law. *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971). "A full and enforceable settlement requires offer and acceptance so as to constitute a meeting of minds on the essential terms of the agreement." *Id.* Intent to contract is based upon the objective manifestations of the parties and not upon subjective but unmanifested intent. *TNT Props., Ltd. v. Tri-Star Developers, LLC.,* 677 N.W.2d 94, 102 (Minn. Ct. App. 2004). Only those terms upon which the settlement hinges are to be considered material terms. *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1028 (D. Minn. 2003) (applying Minnesota law). If there is a substantial factual dispute concerning the material terms of a settlement agreement, or when a situation presents complex factual issues, a district court must hold an evidentiary hearing. *Gatz v. Southwest Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988) (same).

Here, there is no need for an evidentiary hearing because, as discussed at the motion hearing and as described in the parties' memoranda, the parties do not dispute the material terms of the settlement agreement. (*Compare* Doc. No. 43 at 2 *with* Doc. No. 50 at 1-4.) Specifically, there is no dispute about the material terms of the settlement as described on the record by Mr. Roby—specifically, the amount of the cash award, changes to be made to Mr. Rosenbloom's personnel file, non-disparagement and confidentiality clauses, a dismissal with prejudice as to all three defendants, and an

---

[2] The parties and the Court agree that Minnesota state law is applicable here.

agreement by Mr. Rosenbloom not to reapply or accept work from corporate GNC stores. (Doc. No. 37 at 4-5.)  Rather, as discussed both in his memorandum and at the motion hearing, Mr. Rosenbloom *only* raises the issue that the settlement agreement was not to become effective until he signed the settlement agreement.  He offers three theories to support this argument.  The Court will discuss each in turn.

## A. Meeting of the Minds

First, in his memorandum, Mr. Rosenbloom explains that he believed that he would not relinquish his rights until he signed the settlement agreement and that therefore, because he has yet to sign the settlement agreement, he is entitled to proceed with the litigation.  (Doc. No. 50 at 2.)  To support his argument that there was no final settlement on September 29, 2009, Mr. Rosenbloom relies on the following exchange with Mr. Goins:

> Mr. Goins:  Do you understand that when you sign a release of claims, you're going to give up all your claims against GNC, against Mr. Von Behren, and against Mr. Henry if you – and you're going to dismiss those claims forever in return for the payment that was described, the $ [redacted].
> Do you understand that?
>
> Mr. Rosenbloom:  I do.

(Doc. No. 37 at 9.)  Mr. Rosenbloom explains:  "I remember Mr. Goins saying that when I signed the written agreement I would then be giving up certain rights.  I remember thinking that I would have time to figure out what all this meant before deciding whether or not to sign the proposal."  (Doc. No. 51 at ¶ 15.)

The Court has carefully reviewed the parties' arguments and the transcript from the settlement hearing.  The record is clear that on September 29, 2009, the parties had a

meeting of the minds about the material terms of the settlement.  "It is not essential to the

enforcement of an agreement to settle a case that the agreement be in writing  . . . but the

terms of the settlement should normally be stated to the court and taken down by the

reporter *or* otherwise reduced to writing so as to prevent a dispute as to what the terms of

the settlement are."  *Jallen v. Agre*, 119 N.W.2d 739, 743 (Minn. 1963) (emphasis

added).  Therefore, despite the fact that there is no executed settlement agreement, the

parties' settlement is nonetheless effective because the parties expressed on the record an

objective intent to be presently bound to the material terms that Mr. Roby placed in the

record.  Specifically, as Mr. Goins and Magistrate Judge Nelson clarified, the material

terms of the settlement are the amount of the cash award, changes to be made to Mr.

Rosenbloom's personnel file, non-disparagement and confidentiality clauses, a dismissal

with prejudice as to all three defendants, and Mr. Rosenbloom's agreement not to reapply

or accept work from any corporate GNC store.

### B.    Objective Intent

Second, in the affidavit that he submitted with his opposition memorandum, Mr.

Rosenbloom explains that he has certain mental health disorders that can trigger anxiety

and panic attacks.  Mr. Rosenbloom further states that he was "experiencing symptoms of

extreme anxiety and panic on the day of the mediation hearing" and that he informed Mr.

Harmon and Magistrate Judge Nelson that he was experiencing anxiety and panic.  (*Id*. at

¶¶ 12-14.)  Mr. Rosenbloom accuses Mr. Goins of "painfully squeezing" his right arm

during the court proceeding, and he explains that he "felt physical and emotional duress,

by my attorney Mr. Harmon and by Mr. Goins that further exacerbated my anxiety and

overcame my ability to focus and comprehend rationally the proceedings that were unfolding." (*Id*. at ¶¶ 15, 17.) As a result of his anxiety and panic, Mr. Rosenbloom explains that it was difficult for him "to focus and comprehend what was going on during the court proceedings" and that "[c]onsequently, I can recall portions of the proceedings with varying degrees of clarity." (*Id*. at ¶14.) Mr. Rosenbloom explains that only "[b]y holding onto the statements of Mr. Goins [about signing the release], I managed to make it through the court room proceeding." (*Id*. at ¶ 18.)

While the Court is sympathetic to Mr. Rosenbloom's mental health issues, only a party's objective, as opposed to subjective, intent is relevant. "An open court stipulation as to a settlement agreement is a contract but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court." *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 560 (8th Cir. 2008) (original quotations omitted) (applying Missouri law). Any reservation or limitation as to the scope of a settlement agreement must be clearly expressed because courts cannot be concerned with what the parties may have subjectively intended to say. *Id*.

There is nothing in the record to suggest that Mr. Rosenbloom objectively expressed a reluctance to enter into the settlement agreement. Instead, Mr. Rosenbloom's objective actions demonstrated that he intended to be presently bound to the settlement. Specifically, after asking Mr. Rosenbloom if he had participated in the all-day mediation, Magistrate Judge Nelson asked Mr. Rosenbloom whether he was well represented by counsel, to which he replied "very." (Doc. No. 37 at 7.) Magistrate Judge Nelson also asked Mr. Rosenbloom if he understood the terms of the settlement, to which he replied

"yes." (*Id*.) Moreover, Magistrate Judge Nelson gave Mr. Rosenbloom the opportunity to ask questions about the terms of the settlement, and Mr. Rosenbloom affirmatively stated that he understood each of the material terms. (*Id*. at 7-12.) In sum, the record demonstrates that Mr. Rosenbloom clearly expressed in the record the intent to enter into the settlement agreement that included the material terms discussed above.

### C.    Represented By Counsel

Third, in his memorandum, Mr. Rosenbloom asserts that "neither his attorney, Mr. Harmon nor Mr. Goins represented his actual positions and interests relative to the mediation." (Doc. No. 50 at 1.) At the motion hearing, Mr. Rosenbloom changed this argument slightly, arguing for the first time that neither Mr. Goins nor Mr. Harmon represented him at all during the settlement conference. According to Mr. Rosenbloom, he never entered into an attorney/client relationship with Mr. Goins because he only signed a retainer agreement with Mr. Harmon. With respect to Mr. Harmon, Mr. Rosenbloom asserts that Mr. Harmon could not represent him because Mr. Harmon is a full-time public defender in Hennepin County.

The Court finds no support in the record for this argument.[3] With respect to Mr. Goins, the record shows that Mr. Goins signed the original Complaint that commenced this action. The Court notes that the argument that Mr. Goins did not actually represent Mr. Rosenbloom is belied by Mr. Rosenbloom's use of Mr. Goins' statement with respect

---

[3]    In reviewing the record, the Court carefully analyzed the documents filed under seal in connection with Mr. Goins' and Mr. Harmon's motions to withdraw.

to when the settlement was to be effective to support his two theories discussed above. With respect to Mr. Harmon, he filed a notice of appearance two months after this matter was removed to this Court. The Court understands that at the time that he began representing Mr. Rosenbloom, Mr. Harmon was a part-time Hennepin County public defender. "Retained or part-time employed assistant state public defenders may engage in the general practice of law." Minn. Stat. § 611.24(b). And while Mr. Harmon is now a full-time public defender, the Court also understands that Mr. Harmon received permission to continue representing Mr. Rosenbloom as long as he secured co-counsel, which he did by way of Mr. Goins, who coincidentally is also a part-time Hennepin County public defender. Finally, as discussed above, Mr. Rosenbloom told Magistrate Judge Nelson that he was very well represented during the settlement conference. The Court therefore concludes that Mr. Goins and Mr. Harmon were representing Mr. Rosenbloom during the settlement conference and that they did so appropriately.

After considering and rejecting Mr. Rosenbloom's three theories, the Court grants GNC's Motion to Enforce the Settlement consistent with this Order.

## II.     Attorney Fees

GNC also filed a motion seeking to collect fees and costs incurred in connection with its Motion to Enforce the Settlement. At this time, the Court finds it prudent to stay the motion in order to allow Mr. Rosenbloom to submit a specific response to GNC's request for fees and costs.

## CONCLUSION

It is in both parties' best interests to quickly resolve all outstanding issues in this

matter before further attorney fees and costs are incurred.  In the Court's view, the September 29, 2009 settlement was a very fair deal for both parties.  If the parties believe that Magistrate Judge Nelson would be of help in resolving any other issues before the Court rules on the attorney fee and cost portion of GNC's motion, the parties should contact Beverly Riches, Calendar Clerk to Magistrate Judge Nelson, at 612-664-5490.  If the parties intend to utilize Magistrate Judge Nelson's services, they must contact Ms. Riches no later than thirty days from the date of this Order.

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.      GNC's Motion to Enforce Settlement Agreement and to Recover Fees and Costs (Doc. No. [41]) is **GRANTED** with respect to enforcement of the settlement agreement and **STAYED** with respect to the recovery of fees and costs.

2.      Absent settlement, no later than thirty (30) days from the date of this Order, Mr. Rosenbloom shall submit a response to GNC's motion with respect to the recovery of fees and costs.  The response shall be no more than five (5) pages in length.  The Court will then file a separate Memorandum Opinion and Order addressing the issue of attorney fees.

Dated:  March 18, 2010                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge